The Honorable Bill Sample State Representative 2340 North Highway 7 Hot Springs, Arkansas 71909-9309
Dear Representative Sample:
I am writing in response to your recent request for my opinion on the following six (6) questions, some of which have been paraphrased slightly:
 (1) Has the portion of A.C.A. § 14-47-113 which states that the board of directors shall, by majority vote, elect a person to fill a vacancy, been repealed by Act 541 of 1993, codified as A.C.A. 14-47-110(a)(1)(B)(i)? 
 (2) In the event of a vacancy in the position of City Director or Mayor, what is the proper procedure for filling the position? Is the replacement selected by the remaining board members or by special election?
 (3) If a director is erroneously selected by the remaining board members when a special election is required, what is that director's legal status, and what procedure would be required to remove him or her? Would legislation passed by the board when the ineligible director was serving be affected in any way?
 (4) Also, has A.C.A. § 14-47-112(b)(1)(A)(i) been repealed by Act 49 of 1991, codified as A.C.A. 14-61-119(b)(1)?
 (5) Is the computation for the number of signatures needed to remove a city director based on the total number of votes cast for all *Page 2 
candidates for that particular ward position in the last election? Does this number include ballots for that ward that did not reflect a vote in the race in question?
 (6) Is the computation referenced in the last question affected if the director to be removed was unopposed in the last election? Would ballots that were not voted for unopposed candidates, but instead were left blank, count?
RESPONSE
The answer to your first question is "no," in my opinion. Any ambiguity created by the language of the two statutes cited in your question can be resolved, in my opinion, by examining the legislative history of those provisions. It is my opinion, based on the relevant legislative history, that A.C.A. § 14-47-113 has not been repealed by A.C.A. §14-47-110(a)(1)(B)(i) and that the two statutes can be read in harmony, as set forth in greater detail below. In response to your second question, it is my opinion that a vacancy in the position of Mayor or City Director should be filled by a majority vote of the board of directors pursuant to A.C.A. § 14-47-113. Your third question is rendered moot by my response to your second question. In response to your fourth question, it is my opinion that A.C.A. § 14-47-112(b)(1)(A)(i) has been repealed by A.C.A. § 14-61-119(b)(1) to the extent of any inconsistency. In response to your fifth question, it is my opinion that the computation for the number of signatures needed to remove a city director should be based on the total number of votes cast for all candidates for the position in question. It is my further opinion that this number does not include any ballots for that ward that did not include a vote in the particular race in question. In response to your sixth question, it is my opinion that the computation in question is not materially affected if the director whose removal is sought ran unopposed in the last election. Because the relevant statute requires the computation in question to be based on the number of votes cast for candidates for the position, it is my opinion that ballots which left the unopposed races blank should not count when making the relevant calculation.
Question 1: Has the portion of A.C.A. § 14-47-113 which states that theboard of directors shall, by majority vote, elect a person to fill avacancy, been repealed by Act 541 of 1993, codified as A.C.A.14-47-110(a)(1)(B)(i)? *Page 3 
The first provision that have you cited, Arkansas Code Annotated § 14-47-113, provides: Whenever a vacancy shall occur, by any reason, in the office of a director, the board of directors shall, by majority vote, elect a person to fill the vacancy and serve for the unexpired term thereof.
A.C.A. § 14-47-113 (Repl. 1998).
The second provision, Arkansas Code Annotated § 14-47-110(a)(1)(B)(i), provides:
 A special election to fill any vacancy under § 14-47-113
shall be called through a resolution of the board of directors.
A.C.A. § 14-47-110(a)(1)(B)(i) (Supp. 2007).
A comparison of the two provisions generates some ambiguity because A.C.A. § 14-47-113 specifies that a vacancy in the office of director must be filled through an "election" by the board of directors, while A.C.A. § 14-47-110(a)(1)(B)(i) refers to a "special election" to fill such a vacancy. However, as described by my predecessor in office in Op. Att'y Gen. 89-064, this ambiguity can be resolved by referring to the legislative history of this statutory scheme.
Both of these statutes were originally part of Act 99 of 1921. Arkansas Code Annotated § 14-47-110(a)(1)(B)(i) was amended in 1957 and given its present form, as quoted above. At the time of that amendment, the language of A.C.A. § 14-47-113 was significantly different than it is today, and provided for a special election to be called to fill a vacancy in the office of director under certain circumstances:
 In the case of . . . vacancy in the office of a director, the board shall, by majority vote, appoint a person to fill such vacancy if the vacancy occurs less than six months before the next city election [for that position] . . . but otherwise a special election shall be called[.] (Emphasis added).
Later, however, in 1967, A.C.A. § 14-47-113 was amended and the requirement of a "special election" under certain circumstances was removed. As previously set *Page 4 
forth, that section now provides that all vacancies in the office of director must be filled by a majority vote of the board of directors, regardless of when the vacancy occurs in relation to the next city election. See A.C.A. § 14-47-113 (Repl. 1998). Subsection14-47-110(a)(1)(B)(i), however, was not amended further in 1967; and its reference to a "special election" was never removed, creating the current ambiguity.
For this reason, it is my opinion, based on the relevant legislative history, that A.C.A. § 14-47-110(a)(1)(B)(i) does not repeal A.C.A. §14-47-113. Rather the term "special election" in the former section should be construed to refer to the election by the board of directors required by the latter. Accord Op. Att'y Gen. 89-064.
Question 2: In the event of a vacancy in the position of City Director orMayor, what is the proper procedure for filling the position? Is thereplacement selected by the remaining board members or by specialelection?
I must initially note that a vacancy in the position of Mayor must be filled in the same way as any other vacancy on the board of directors.See Op. Att'y Gen. 89-064. This is because the Mayor is generally considered to be a member of the board. See, e.g., A.C.A. § 14-47-116; A.C.A. § 14-61-111 through-112. (Repl. 1998).
In my opinion, the proper way to fill any vacancy on the board of directors is set forth by A.C.A. § 14-47-113. That is, "the board of directors shall, by majority vote, elect a person to fill the vacancy and serve for the unexpired term thereof." A.C.A. § 14-47-113 (Repl. 1998) (emphasis added). As explained in response to your first question, that provision has not been repealed by implication and remains in force.
Question 3: If a director is erroneously selected by the remaining boardmembers when a special election is required, what is that director'slegal status, and what procedure would be required to remove him or her?Would legislation passed by the board when the ineligible director wasserving be affected in any way?
Because I opined in response to your second question that election by the remaining board members is, in fact, the proper method to fill a vacancy on the board of directors, your third question is rendered moot. *Page 5 
Question 4: Also, has A.C.A. § 14-47-112(b)(1)(A)(i) been repealed byAct 49 of 1991, codified as A.C.A. 14-61-119(b)(1)?
Yes, in my opinion, to the extent of any inconsistency, A.C.A. § 14-47-112(b)(1)(A)(i), as the older statute, is repealed by implication and A.C.A. § 14-61-119(b)(1) will control.
Chapter 47 of Title 14 of the Arkansas Code gives cities of the first class the option of adopting the City Manager form of municipal government. Within that chapter, A.C.A. § 14-47-112 addresses the "[r]emoval of a director." Subsection 14-47-112(b)(1)(A)(i) addresses the number of signatures required on a petition to remove a director, and provides:
 This petition shall be signed by electors entitled to vote for a successor to the incumbent sought to be removed, equal in number to at least thirty-five percent (35%) of the number of ballots cast for all candidates for directors at the preceding primary election at which directors were nominated or elected[.] 
A.C.A. § 14-47-112(b)(1)(A)(i) (Repl. 1997) (emphasis added).
Chapter 61 of Title 14 of the Arkansas Code is known as the "City Manager Enabling Act of 1989." The City Manager Enabling Act automatically applies to all Arkansas cities that have chosen the City Manager form of government, as set forth by A.C.A. § 14-47-101, et seq. A.C.A. § 14-61-102 (Repl. 1998) ("This chapter shall apply to all cities of the first class that now have or may hereinafter adopt, the management form of government."). Within Chapter 61, A.C.A. § 14-61-119 addresses the "[r]emoval of a director." Subsection 14-61-119(b)(1) addresses the number of signatures required to remove a director, and provides:
 This petition shall be signed by electors entitled to vote for a successor to the incumbent sought to be removed, equal in number to at least thirty-five percent (35%) of the number of ballots cast for all candidates for the position held by the incumbent sought to be removed at the preceding election for that position.
A.C.A. § 14-61-119(b)(1) (Supp. 2007) (Emphasis added). *Page 6 
The italicized language within each quoted portion demonstrates where the two statutes differ. As described above, both statutes apply to cities of the first class that have selected the management form of government and deal with the same subject matter — removal of a director. Therefore, to the extent they are inconsistent, one must control. The courts of this state disfavor repeal by implication; however, if an old law and a new law are so repugnant to one another that both cannot stand, then repeal by implication must be upheld. See Donoho v. Donoho, 318 Ark. 637, 639-40,887 S.W.2d 290, 291 (1994).
Because A.C.A. § 14-61-119 was initially enacted in 1989, while A.C.A. § 14-47-112 was initially enacted in 1921, it is my opinion that, to the extent the two are inconsistent, A.C.A. § 14-47-112(b)(1)(A)(i), as the older statute, is repealed by implication and A.C.A. § 14-61-119(b)(1) will control.
Question 5: Is the computation for the number of signatures needed toremove a city director based on the total number of votes cast for allcandidates for that particular ward position in the last election? Doesthis number include ballots for that ward that did not reflect a vote inthe race in question?
As set forth in response to your fourth question, A.C.A. §14-61-119(b)(1) controls the number of signatures needed to remove a director in a city that has chosen the management form of government. The plain language of that subsection requires the computation to be based on "the number of ballots cast for all candidates for the position held by the incumbent sought to be removed." A.C.A. § 14-61-119(b)(1) (Supp. 2007). In other words, the relevant number is the total number of votes cast in the particular race which resulted in the election of the incumbent whose removal was sought.
Accordingly, because the statute requires the computation to be based on ballots that were "cast . . . for . . . candidates for the position"
in question, it is my opinion that the number does not include ballots that do not reflect votes for that particular race. A.C.A. §14-61-119(b)(1) (Supp. 2007).
Question 6: Is the computation referenced in the last question affectedif the director to be removed was unopposed in the last election? Wouldballots that did not vote for unopposed candidates, but instead left theunopposed races blank, count? *Page 7 
In my opinion, the fact that a director ran unopposed in the last election does not materially affect the manner in which the calculation is made. As previously stated, the computation is based on "the number of ballots cast for all candidates for the position[.]" A.C.A. §14-61-119(b)(1) (Supp. 2007). Of course, in an unopposed race, the number of votes cast for the winner would be the same as the number of votes cast "for all candidates."
As previously stated, the plain language of the statute requires the computation to be based on ballots "for . . . candidates." A.C.A. § 14-61-119(b)(1) (Supp. 2007). For this reason, ballots that left the unopposed races blank would not count, in my opinion.
Assistant Attorney General Jennie Clingan prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL, Attorney General *Page 1